**LTL ATTORNEYS LLP**
Enoch Liang (SBN 212324)
enoch.liang@ltlattorneys.com
Alexander Hu (SBN 279585)
alex.hu@ltlattorneys.com
Dat Nguyen (SBN 280755)
dat.nguyen@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: 213-612-8900
Fax: 213-612-3773

Attorneys for Petitioner,
MING YANG

FILED

AUG 0 1 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of MING YANG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings, Pursuant to the Federal Rules of Civil Procedure, of Respondent QIMING VENTURE PARTNERS | Case No.: CV-19-80192 MISC NC<br><br>***EX PARTE* APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782** |



Petitioner Ming Yang ("Petitioner") hereby applies *ex parte* for an order pursuant to 28 U.S.C. § 1782 granting Petitioner leave to serve a subpoena, pursuant to Rule 45 of the Federal Rules of Civil Procedure, upon Respondent Qiming Venture Partners ("Qiming") for discovery related to a foreign legal proceeding in the Eastern Caribbean Supreme Court of the British Virgin Islands ("BVI Court").

## NATURE OF THE APPLICATION

1. This is a limited purpose action brought pursuant to 28 U.S.C. § 1782 to obtain evidence from Qiming for use in a foreign judicial proceeding.

2. 28 U.S.C. § 1782(a) authorizes a district court to order parties within its district to provide evidence in support of foreign legal proceedings.

3. As discussed in greater detail in Petitioner's accompanying memorandum of law, this Application meets the three statutory requirements set forth in 28 U.S.C. § 1782 and satisfies the four discretionary factors annunciated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

4. Accordingly, Petitioner respectfully requests that the Court permit him to serve a subpoena seeking documentary evidence from Qiming.  Attached hereto as Exhibit A is a copy of the substance of Petitioner's proposed subpoena.

5. A proposed order granting that relief is attached hereto as Exhibit B.

## THE PARTIES

6. Petitioner is an individual who resides at 12134 Beauchamps Lane, Saratoga, CA 95070.

7. On information and belief, Qiming is a venture capital firm with an office located at 108 First Street, Los Altos, CA 94022.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically 28 U.S.C. § 1782.

1

9.     This Court is the proper venue for this action because Qiming maintains an office in this District.

### BACKGROUND

10.     In or around 1997, Petitioner and Cheng-Ta "Eric" Yang ("Eric") founded a company called Columbia Consulting Group, now known as Tutor Group Holding Inc. ("TGH"). TGH holds the controlling interests in underlying companies operating a language tutoring business (the "Business").

11.     Petitioner was Chairman and Eric was CEO of TGH.

12.     Over the years, due to Petitioner's connections, business acumen, and hard work, TGH flourished.

13.     In or around 2012, TGH underwent Series A funding. In or around that time, Petitioner and Eric, along with Lei "James" Yang ("James"), created MEJ Investment Ltd., a company incorporated under the British Virgin Islands Business Companies Act 2004, and transferred their ownership shares in TGH to MEJ. Petitioner, Eric, and James are collectively referred to herein as the "Brothers."

14.     The ownership of MEJ is as follows:  Petitioner – 23.80%; Eric – 9.5%; James – 16.7%; and Eric's wife, Chi-Weh "Celia" Sah ("Celia") – 50.0%. Upon information and belief, the MEJ shares held by Celia are held for the benefit of Eric.

15.     Prior to September 2018, MEJ held the controlling interest in TGH. Upon information and belief, MEJ currently holds a large percentage, but no longer a controlling interest, in TGH.

16.     MEJ, as the head of the corporate structure that was established for the conduct of the Business, was founded upon the basis of the personal relationship of trust and confidence among the Brothers and has always operated as a quasi-partnership in that it was always understood and/or agreed among the Brothers, *inter alia*, that the Petitioner would be entitled to participate in the management of MEJ and the Business at a senior level and that he would be

2

consulted by Eric and James on any significant or important decisions to be taken in relation to MEJ.

17.   Wrongfully and contrary to Petitioner's legitimate expectations arising from either the understanding and/or agreement among the Brothers, since approximately May or June 2017, Eric and James have conducted the affairs of MEJ oppressively and/or in a manner that is unfairly discriminatory towards Petitioner.  Among other things, Eric and James (1) caused MEJ to remove Petitioner as a Director of TGH; (2) ceased consulting with Petitioner on significant or important decisions taken in relation to MEJ and the Business; (3) dissipated a substantial amount of MEJ's assets, namely its shares of TGH, without consulting Petitioner, and Petitioner has not received any distribution of the proceeds of such sales; and (4) caused MEJ to approve the acquisition by Ping An, a large insurance company in China, of an undisclosed but substantial interest in TGH without Petitioner's consent or knowledge.

18.   Eric also conducted a campaign of false, negative statements concerning Petitioner's conduct, including with regard to the procurement of a contract for a private jet service with VistaJet.  Rocky Lee ("Rocky"), an attorney for TGH, assisted Eric in coordinating this campaign of oppression, including sending Petitioner a purported "termination agreement" that would immediately terminate all of his positions at TGH and attempting to extort Petitioner out of his shares in TGH by threatening him with criminal prosecution in Hong Kong and China.  As a result of Eric and Rocky's actions, Petitioner was terminated from his employment at TGH and lost all of his roles in the Business.

19.   These acts were oppressive towards Petitioner and in breach of the understanding or agreement among the Brothers as to Petitioner's rights to participate in the management of MEJ and the Business.  Moreover, by reason of his removal as director of TGH and other roles in the Business, Petitioner has lost significant amounts of income and other compensation.

3

20.     On July 4, 2019, Petitioner filed an action against Eric, James, Celia, and MEJ in the Eastern Caribbean Supreme Court of the British Virgin Islands (the "BVI Action") seeking, *inter alia*, a buyout of Petitioner's interest in MEJ reflecting the fair market value of Petitioner's indirect ownership interest in TGH shares prior to the dissipation of assets from MEJ; a distribution to Petitioner of TGH shares reflecting the number of shares held indirectly by Petitioner prior to the dissipation of assets from MEJ; the liquidation of MEJ; and/or compensatory damages reflecting lost income.

21.     On July 24, 2019, Petitioner amended his statement of claim in the BVI Action to include allegations concerning Ping An's acquisition of an interest in TGH, which was publicly announced on July 11, 2019. A copy of the amended statement of claim is attached hereto as Exhibit C.

22.     Qiming is currently a shareholder of TGH, and has been a shareholder of TGH since the time of its Series A funding in or around 2012. Upon information and belief, Qiming holds both preferred and common shares of TGH.

23.     As a shareholder of TGH, Qiming possesses both informational and voting rights concerning the sale and/or dissipation of TGH shares by MEJ, the termination of Petitioner's positions at TGH, and Ping An's acquisition of an interest in TGH.

## TITLE 28 U.S.C. § 1782

24.     28 U.S.C. § 1782 authorizes this Court to order any person in the Northern District of California to produce documents or give testimony for use in a foreign proceeding upon the application of any person with an interest in that proceeding. Specifically, 28 U.S.C. § 1782(a) provides, in relevant part, that:

> The district court of the district in which a person resides or is found may order him ... to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that ... the document or other thing be produced, before a person appointed by the court.

4

25.     To obtain discovery in aid of a foreign litigation, a petitioner must show: (a) that the person to provide discovery resides or is found in the district where the application is made; (b) that the information sought is "for use in a proceeding in a foreign or international tribunal"; and (c) that the petitioner is an "interested person" in the foreign proceeding.   28 U.S.C. § 1782.   Petitioner satisfies each of these requirements.

26.     As set forth in greater detail in Petitioner's accompanying memorandum of law, this Application satisfies 28 U.S.C. § 1782's three statutory requirements because: (1) Qiming maintains an office and is therefore located within this District; (2) the evidence that the Application and Subpoena seek will be used to support Petitioner's claims in the BVI Action; and (3) Petitioner is an interested person in the BVI Action.

27.     Further, as discussed in Petitioner's accompanying memorandum of law, the Application also satisfies the four discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

## THE SUBPOENA

28.     The Subpoena, the substance of which is attached hereto as Exhibit A, is narrowly tailored to obtain documentary evidence that will support Petitioner's claims in the BVI Action.

29.     The Subpoena seeks the following general categories of documents:

    a.     Documents and communications between Qiming and TGH, Eric, or Rocky relating to any investment by Ping An in TGH, including documents reflecting the final terms of any such investment.

    b.     Documents and communications between Qiming and TGH, Eric, or Rocky relating to TGH's Series D financing, including documents reflecting the final terms of such financing.

c. Documents and communications between Qiming and TGH, Eric, or Rocky relating to any sale or transfer of shares of TGH held by MEJ, including documents reflecting the final terms of any such share sale or transfer.

d. Documents and communications between Qiming and TGH, Eric, or Rocky concerning the termination of Petitioner's employment and board position at TGH, including documents and communications relating to any legal action brought or threatened to be brought by Petitioner against TGH, Eric, Rocky, or MEJ.

e. Documents and communications between Qiming and TGH, Eric, or Rocky concerning VistaJet and any investigation into or settlement of any contract between VistaJet and TGH.

## **PRAYER FOR RELEIF**

WHEREFORE, Petitioner requests:

(1) An order pursuant to 28 U.S.C. § 1782 granting Petitioner leave to serve the Subpoena upon the Qiming; and

(2) Such other relief is just and proper.

DATED: July 29, 2019                    LTL ATTORNEYS LLP


By: _/s/ Enoch Liang_____
    Enoch Liang

    Attorneys for Petitioner
    MING YANG

6

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

| | |
|---|---|
| IN RE App'l of Ming Yang 28 USC 1782 | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     Qiming Venture Partners
                                   108 First Street Los Altos, CA 94022
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
        See Exhibit 1

| Place: LTL Attorneys LLP<br>        600 Gateway Boulevard, Suite 1010<br>        South San Francisco, CA 94080 | Date and Time: |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  July 29, 2019

            *CLERK OF COURT*                                     OR

        _____                    _____
            *Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*        Ming Yang
_____ , who issues or requests this subpoena, are:
Enoch Liang, LTL Attorneys LLP, 300 South Grand Ave., 14th Floor, Los Angeles, CA 90071, Enoch.Liang@ltlattorneys.com, (213) 612-8900

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 1

**EXHIBIT 1**

**DEFINITIONS**

1.      The terms "you," "your," or "Qiming" means Qiming Venture Partners as well as any persons or entities acting on Qiming's behalf or under its direction or control, including, without limitation, its agents, representatives, employees, consultants, attorneys, predecessors, successors, assigns, officers, directors, affiliates, partners, subsidiaries, parent corporations, and investors.

2.      The term "Tutor Group Holding" means Tutor Group Holding Inc. and any parent, subsidiary, or sibling entities, and if context so requires, shall include Tutor Group Holding's agents, employees, or representatives.

3.      The term "MEJ" means MEJ Investments Ltd. and any parent, subsidiary, or sibling entities, and if context so requires, shall include VistaJet's agents, employees, or representatives.

4.      The term "Ping An" means Ping An Insurance (Group) Company of China, Ltd. and any parent, subsidiary, or sibling entities, and if context so requires, shall include Ping An's agents, employees, or representatives.

5.      The term "VistaJet" means the company operating in China under the trading name VistaJet, including VJCN (Beijing) Aviation Consulting Co., Ltd., and any parent, subsidiary, or sibling entities, and if context so requires, shall include VistaJet's agents, employees, or representatives.

6.      The term "Eric" means Chengta "Eric" Yang, as well as any persons or entities acting on Eric's behalf or under his direction or control, including, without limitation, his agents, representatives, employees, consultants, and attorneys.

7.      The term "Rocky" means Rocky Lee, as well as any persons or entities acting on Rocky's behalf or under his direction or control, including, without limitation, his agents, representatives, employees, consultants, and attorneys.

8.      The terms "document" or "documents" shall have the broadest definition possible, and shall include, but not limited to, any kind of written or graphic material, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, copies, drafts and both sides thereof, and including, but not limited to: any paper, report, binder, cover note, certificate, letter, correspondence, record, table, chart, analysis, graph, schedule, report, test, study

memorandum, note, list, diary, log, calendar, telex, message (including, but not limited to, inter-office

and intra-office communications), questionnaire, bill, purchase order, blog, chart, data file, log file of

computer access activity, shipping order, contract, memorandum of contract, agreement, assignment,

license, permit, ledger, ledger entry, book of account, check, order, invoice, receipt, statement,

financial data, acknowledgement, computer or data processing card, computer or data processing disk,

computer-generated matter, photograph, photographic negative, phonograph recording, transcript or

log of recording, projection, videotape, film, microfiche, and any other data compilation from which

information can be obtained or translated, report and/or summary of investigations, draft and revision

of drafts of any documents and original preliminary notes or sketches, and any record kept by

electronic, photographic, optical, mechanical, magnetic means and things similar to any of the

foregoing, including computer media, regardless of their author, no matter how produced or

maintained, in your actual or constructive possession, custody or control, or the existence of which

you have knowledge, and whether prepared, published or released by you or by any other person. If a

document has been prepared in several copies, or additional copies have been made, or copies are not

identical (or which by reason of subsequent modification of a copy by the addition of notations or

other modifications, are no longer identical), each non-identical copy is a separate document.

     9.    The terms "communication" or "communications" means any manner or means of

disclosure, transfer or exchange of information with any person (whether internal or external to an

organization), including but not limited to by means of verbal conversation, letter, memoranda,

message, note, telegram, telex, electronic mail, facsimile, text message, chat message, instant message,

Facebook message or Twitter message, posting, or by any other document.

     10.    The term "relating to" means embodying, referring to, relating to, summarizing,

constituting, containing, analyzing, studying, explaining, mentioning, showing, discussing, supporting,

refuting, reflecting, memorializing, describing, commenting upon, and/or connected in any way

factually or logically with, the matter therein.

     11.    As used herein, the masculine includes the feminine and neuter; the singular includes

the plural; "each" includes and encompasses "every," and vice-versa; "any" includes and encompasses

EXHIBIT 1 TO QIMING SUBPOENA

1  all, and vice-versa; the terms "and" and "or" have both conjunctive and disjunctive meanings so as to
2  be inclusive of any documents.

3      12.    References to the singular include the plural.

4      13.    The use of any tense of any verb includes all other tenses of the verb.

5  **INSTRUCTIONS**

6      1.    This is a continuing request for production of documents.  If, after making your initial
7  productions, you obtain or become aware of any further documents responsive to this subpoena, you
8  must produce such additional documents.

9      2.    Pursuant to applicable rules of civil procedure, you are required to obtain and furnish all
10  information available to you or in your control or available or in the control of any of your
11  representatives, employees, agents, brokers, servants, or attorneys.

12      3.    Each request shall be construed independently and responded to separately.

13      4.    If any document or request for information or definition or instruction is objected to in
14  whole or in part, specify all grounds on which objection rests. Respond to all portions of each such
15  request to which no objection is asserted. In addition, state whether any responsive information has been
16  omitted from any response or whether and in what way the search for responsive information has been
17  delimited or circumscribed on the basis of any such objection.

18      5.    The documents produced in response to this request shall include all attachments and
19  enclosures.

20      6.    If you believe that any of the requests calls for an assertion of a claim of privilege, answer
21  so much of the request as is not objected to, state that part of each request to which you raise objection
22  and set forth the basis for your claim of privilege with respect to such information you refuse to give.

23      7.    If, for reasons other than a claim of privilege, you refuse to answer any request, please
24  state the grounds upon which the refusal is based with sufficient specificity to permit determination of
25  the propriety of such refusal.

26      8.    Each request calls for the production of the original document. Each request also includes
27  a request for production of all preliminary drafts of documents that differ in any respect from the original
28  or final draft or from each other (e.g., by reason of handwritten notes or comments added to one copy

1    of a document).

2         9.    If any documents requested have been lost or destroyed, the documents lost or destroyed

3    must be identified by author, date and subject matter.

4         10.    For any document which was once in your control, but is no longer, please indicate the

5    date the document ceased to be in your control, the manner in which it is ceased, and the name and

6    address of its present custodian.

7         11.    If you do not agree with any definition of the terms provided herein, you are instructed

8    to provide a reasonable, alternative definition for that term, consistent with industry custom and usage.

9         12.    Each of the definitions and instructions contained herein shall be fully applicable to each

10   request notwithstanding that a definition or instruction may, in whole or in part, be reiterated in a

11   particular request and notwithstanding that a particular request may incorporate supplemental

12   instructions or definitions.

13        13.    Unless otherwise indicated, each request is to be construed as encompassing all

14   documents from the date the document (or thing) was first created, generated or received and continues

15   to the date of production.

16        14.    If any document or request is deemed to call for the disclosure of confidential or

17   proprietary information, such documents or information may be produced pursuant to the protective

18   order in this litigation.

19                              **REQUESTS FOR PRODUCTION**

20   **REQUEST FOR PRODUCTION NO. 1:**

21        All documents and communications between you and Tutor Group Holding, Eric, or Rocky

22   relating to any investment by Ping An in Tutor Group Holding from May 2017 to present.

23   **REQUEST FOR PRODUCTION NO. 2:**

24        All documents reflecting the final terms of any investment by Ping An in Tutor Group Holding,

25   including term sheets, memoranda of association, articles of association, shareholder agreements, and

26   contracts or agreements.

27   **REQUEST FOR PRODUCTION NO. 3:**

28        All documents and communications between you and Tutor Group Holding, Eric, or Rocky

1   relating to Tutor Group Holding's Series D financing from May 2017 to present.

2   **REQUEST FOR PRODUCTION NO. 4:**

3         All documents reflecting the final terms of Tutor Group Holding's Series D financing, including

4   term sheets, memoranda of association, articles of association, shareholder agreements, and contracts or

5   agreements.

6   **REQUEST FOR PRODUCTION NO. 5:**

7         All documents and communications between you and Tutor Group Holding, Eric, or Rocky

8   relating to any sale or transfer of shares of Tutor Group Holding held by MEJ from May 2017 to present.

9   **REQUEST FOR PRODUCTION NO. 6:**

10        All documents reflecting the final terms of any sale or transfer of shares of Tutor Group Holding

11  held by MEJ from May 2017 to present, including term sheets, memoranda of association, articles of

12  association, shareholder agreements, and contracts or agreements.

13  **REQUEST FOR PRODUCTION NO. 7:**

14        All documents and communications between you and Tutor Group Holding, Eric, or Rocky

15  concerning the termination of Ming Yang's employment and board position at Tutor Group Holding,

16  including documents and communications relating to any legal action brought or threatened to be

17  brought by Ming Yang against Tutor Group Holding, Eric, Rocky, or MEJ.

18  **REQUEST FOR PRODUCTION NO. 8:**

19        All minutes for any Tutor Group Holding board meeting in which any legal action brought or

20  threatened to be brought by Ming Yang against Tutor Group Holding, Eric, Rocky, or MEJ was

21  discussed.

22  **REQUEST FOR PRODUCTION NO. 9:**

23        All documents and communications between you and Tutor Group Holding, Eric, or Rocky

24  concerning VistaJet and any investigation into or settlement of any contract entered into between

25  VistaJet and Tutor Group Holding.

26

27

28

EXHIBIT 1 TO QIMING SUBPOENA

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12
13
14

| | |
|---|---|
| 15   In re Application of MING YANG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings, Pursuant to the Federal Rules of Civil Procedure, of Respondent QIMING VENTURE PARTNERS | Case No.:   **[PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782** |

16
17
18
19
20
21
22
23
24
25
26
27
28

This matter came before the Court upon the *Ex Parte* Application for Discovery in Aid of Foreign Litigation Pursuant to 28 U.S.C. § 1782 filed by Petitioner Ming Yang ("Petitioner") (the "Application").

The Court, having fully considered the papers on file and submitted herewith, and good cause appearing, HEREBY ORDERS that:

1.    The Application is GRANTED.

2.    Petitioner is authorized to issue and serve a subpoena on Qiming Venture Partners ("Qiming") substantially in the form proposed and attached as Exhibit A to the Application.

3.    Until further Order of this Court, Qiming shall preserve documents, electronic or otherwise, and evidence in its possession, custody or control that contains information potentially relevant to the subject matter of the BVI Action (as defined in the Application).

4.    Copies of the Application, Memorandum in Support thereof, and this Order shall be mailed to the following:

> Qiming Venture Partners
> 108 First Street
> Los Altos, California 94022

IT IS SO ORDERED

Dated: _____          _____

United States District Judge

# EXHIBIT C

Case Number :BVIHCOM2019/0093



THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO: BVIH(Com) 2019/ 0093

**Submitted Date:24/07/2019 12:50**

**Filed Date:24/07/2019 12:50**

**Fees Paid:112.91**

BETWEEN:

## MING YANG

Claimant

## AND

## CHENG-TA YANG

## CHI-WEH SAH

## LEI YANG

## MEJ INVESTMENTS LTD

Defendants

## <u>AMENDED STATEMENT OF CLAIM</u>

Amended Pursuant to Part 20.1(1) of the Civil Proceedings Rules 2000

1. The Claimant is a businessman who resides at 12134 Beauchamps Lane, Saratoga, California in the United States of America. At all material times the Claimant has been a substantial shareholder in the Fourth Defendant, holding 23.80% of its issued shares.

2. The First Defendant is a businessman who resides at 13F No 139 Sec 2 Xinyi Road Zongzheng District Taipei City Taiwan. The First Defendant holds 9.5% of the issued shares of the Fourth Defendant and is a director of the Fourth Defendant. The First Defendant is the brother of the Claimant.

3.  The Second Defendant is the wife of the First Defendant and resides at Xinyi Road aforesaid and has been issued 50% of the shares of the Fourth Defendant by the First Defendant. To the best of the Claimant's knowledge, she holds these shares for the benefit of the First Defendant.

4.  The Third Defendant is a businessman who resides at Room 1802 No. 168 Xizang Zhong Road Huangpu District Shanghai People's Republic of China. The Third Defendant holds 16.7% of the issued shares of the Fourth Defendant and is a director of the Fourth Defendant. The Third Defendant is a close relative of the Claimant and the First Defendant.

5.  The Claimant and the First and Third Defendants are collectively referred to herein as the "Brothers".

6.  The Fourth Defendant "MEJ" is a company incorporated under the British Virgin Islands Business Companies Act 2004 as company #1692204 with its registered office situated in Road Town, British Virgin Islands. The Claimant's English first name is Ming; the First Defendant's English first name is Eric; and the Third Defendant's English first name is James; hence, the name of the Fourth Defendant consists of the first initials of each of the Brothers: MEJ.

7.  Until approximately September 2018, MEJ held the controlling interest in TutorGroup Holding Inc, a company incorporated in the Cayman Islands which holds the controlling interests in underlying companies operating a language tutoring business (the "Business"). Upon information and belief, since September 2018, MEJ now holds a large percentage, but no longer a controlling interest, in TutorGroup Holding Inc.

8.  The Business was founded by the Claimant in or about the year 1997 and he subsequently invited the First and Third Defendants to participate in this business with him.

9. MEJ, as the head of the corporate structure that was established for the conduct of the Business, was founded upon the basis of the personal relationship of trust and confidence among the Brothers and has always operated as a quasi-partnership in that it was always understood and/or agreed among the Brothers inter alia:

   a. That the Claimant, as shareholder, would be entitled to participate in the management of the Fourth Defendant and of the Business at a senior level;

   b. That the Claimant would be consulted by the First and Third Defendants on any significant or important decisions to be taken in relation to MEJ;

   c. That all the shareholders of MEJ would be treated equally;

   d. That the Claimant would have the right to be appointed to roles in the Business that MEJ had the power to fill such as to the board of directors of TutorGroup Holding Inc;

   e. That the Claimant would be remunerated for his roles undertaken on behalf of MEJ; and

   f. MEJ and the underlying Business would be operated for the benefit of all the Brothers.

10. By virtue of the understanding and/or agreement pleaded at paragraph 9 above, the Claimant has always had a legitimate expectation that while he remained a shareholder of MEJ he would be entitled to and would participate in the management of MEJ and by extension the Business.

11. Wrongfully and contrary to the legitimate expectation of the Claimant arising from either the understanding among the Brothers and/or their agreement, the First and Third Defendants have conducted the affairs of MEJ oppressively and/or in a manner that is unfairly discriminatory towards the Claimant in that the Claimant has been excluded from the management of MEJ and of the Business since approximately May or June 2017.

PARTICULARS

(a) The Claimant was removed by MEJ, acting through the First and Third Defendants, as a Director of TutorGroup Holding Inc. in or about June 12, 2017;

(b) Since about May 2017, the First and Third Defendants have ceased consulting with the Claimant on significant or important decisions taken in relation to MEJ and the Business;

(c) The First Defendant has conducted a campaign of negative statements concerning the conduct of the Claimant in relation to the affairs of the Fourth Defendant and the Business and has made physical threats to him thereby preventing him from carrying out his role in the Fourth Defendant under the arrangement and/or agreement of the Brothers;

(d) MEJ, acting through the First and Third Defendants, has dissipated a substantial amount of its assets, namely its shares of TutorGroup Holding Inc, without consulting the Claimant, and the Claimant has not received any distribution of the proceeds of such sales; and

(e) In or around 2018, MEJ, acting through the First and Third Defendants, altered its corporate tax status in the United States, without consulting the Claimant, with the sole intent to prejudice the Claimant by preventing him from receiving any tax-free distribution of shares in TutorGroup Holding Inc held indirectly by Claimant through his ownership interest in MEJ.

(f) In or around July 12, 2019, without the consent or knowledge of the Claimant, the MEJ acting through the First and Third Defendants as shareholder of TutorGroup Holding Inc, approved the acquisition by Ping An, a large insurance company in China, ("Ping An") of an undisclosed but substantial interest in TutorGroup Holding Inc through its overseas subsidiaries. The Claimant believes that pursuant to this acquisition Ping An has taken or will take a controlling interest in TutorGroup Holding Inc. However, the quantum of the interest or any financial details of the transaction were not disclosed. Furthermore, because the Claimant was not consulted, he is unaware of the consequences of the acquisition in relation to his interests held at in MEJ.

12. Further or in the alternative, the acts of MEJ in causing the Claimant to be removed as a director of TutorGroup Holding Inc. were oppressive towards the Claimant in that they were in breach of the understanding or agreement among the Brothers as to the rights of all the shareholders of MEJ to participate in the management of MEJ and the Business.

13. Further and in the alternative, by reason of the matters pleaded above, the affairs of the Fourth Defendant are being conducted solely for the benefit of the First, Second and Third Defendants and unfairly and so as to prejudice the rights of the Claimant as shareholder, not for the equal benefit of the Claimant as the other shareholder of MEJ, and the Claimant has lost all trust and confidence in the First and Third Defendants' management of the affairs of the Fourth Defendant.

14. By reason of his removal as director of TutorGroup Holding Inc and other roles in the Business, the Claimant has lost income arising from his holding of these offices.

## PARTICULARS

(a) The Claimant was removed by MEJ, acting through the First and Third Defendants, as a Director of TutorGroup Holding Inc on or about June 12, 2017;

(b) As a result of the First Defendant's campaign of negative statements concerning the conduct of the Claimant in relation to the affairs of the Fourth Defendant and the Business, the Claimant was removed from his roles as Chief Strategy Officer and Chief Customer Satisfaction Representative of TutorGroup Holding Inc in or around May or June 2017, and since that time has ceased receiving any salary or benefits from TutorGroup Holding Inc

(c) By reason of his wrongful removal as Director and Chief Strategy Officer and Chief Customer Satisfaction Representative of TutorGroup Holding Inc, the Claimant has suffered the following losses:

    a.   loss of his annual salary of $500,000;

    b.   loss of annual bonus of approximately $500,000

    c.   loss of the opportunity to earn a bonus of $5,000,000 upon the initial public offering of TutorGroup Holding Inc's shares

(d) As a result of the First Defendant's campaign of negative statements concerning the conduct of the Claimant in relation to the affairs of the Fourth Defendant and the Business, the Claimant has been unable to obtain employment since he was terminated from his positions at TutorGroup Holding Inc.

AND THE CLAIMANT CLAIMS:

1. An Order that the First, Second and Third Defendants do purchase the Claimant's shares in the Fourth Defendant in an amount reflecting the number of shares of TutorGroup Holding Inc held indirectly by the Claimant through his ownership interest in MEJ prior to the dissipation of assets from MEJ believed to have occurred in or around 2018, to be determined by appraisers jointly appointed by the Claimant and these Defendants or in default by the Court at the cost of these Defendants.

2. In the alternative, an Order that the Fourth Defendant do make a distribution to the Claimant of shares that it holds in TutorGroup Holding Inc. equal to the number of shares of TutorGroup Holding Inc held indirectly by the Claimant through his ownership interest in MEJ prior to the dissipation of assets from MEJ believed to have occurred in or around 2018, and that the Fourth Defendant should satisfy any taxes due from the Claimant in respect of such distribution.

3. In the further alternative, an Order that a liquidator be appointed over the Fourth Defendant pursuant to the Insolvency Act 2003 section 162(1)(b).

4. Payment from the Fourth Defendant of the sum of $7,000,000.00 USD representing income lost by the Claimant as a result of his removal as director of TutorGroup

Holding Inc and from his roles in relation to the business operated by that company and its subsidiaries.

5. Costs.

6. Such further or other relief as to the Court seems just.

Dated this 4th day of July 2019

Amended this 24th day of July. 2019

.......................................................

Reisa L Singh

SABALS Law

Legal Practitioners for the Claimant

The Legal Practitioners for the Claimant are Sabals Law of 2nd Floor Abbott Building, Waterfront Drive, Road Town, Tortola, British Virgin Islands. Tel: 284 494 8174 Fax 284 494 8176. The court office is at Sakal building, James Walter Francis Drive, Road Town, Tortola and is open Mondays-Fridays from 9:00 am to 2:00 pm except for public holidays. Tel 284 468 5001 Fax 284 468 4947

## CERTIFICATE OF TRUTH

I, MING YANG, the Claimant, certify that the facts stated in the Amended Statement of Claim herein are true.

MING YANG

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHAB2019/0093


MING YANG
**Claimant**

AND


CHENG-TA YANG
CHI-WEH SAH
LEI YANG
MEJ INVESTMENTS LTD
**Defendants**

**********************************************************

AMENDED STATEMENT OF CLAIM

**********************************************************


Filed by:

**SABALS LAW**
87 Main Street
2nd Floor, Abbott Building
Waterfront Drive, P.O. Box 3169
Road Town, Tortola VG1110
British Virgin Islands
T. 284-494-8174 F. 284-494-8176

**Barristers for the Claimant**